# United States Court of Appeals for the Federal Circuit

———————————

**TAURUS IP, LLC (now known as Manufacturing System Technologies, LLC),**
*Plaintiff/Third Party Defendant-Appellant,*

AND

**ORION IP, LLC (now known as Clear With Computers LLC)** AND **ERICH SPANGENBERG,**
*Third Party Defendants-Appellants,*

v.

**DAIMLERCHRYSLER CORPORATION, CHRYSLER FINANCIAL, LLC,** AND **DAIMLERCHRYSLER COMPANY, LLC,**
*Defendants,*

AND

**CHRYSLER HOLDING, LLC**,
*Defendant,*

AND

**MERCEDES-BENZ USA, INC.** AND **CHRYSLER GROUP LLC,**
*Defendants/Third Party Plaintiffs-Cross Appellants.*

———————————

2008-1462, -1463, -1464, -1465

———————————

Appeals from the United States District Court for the Western District of Wisconsin in No. 07-CV-158, Chief Judge Barbara B. Crabb.

————————————

Decided: August 9, 2013

————————————

JON E. WRIGHT, Sterne, Kessler, Goldstein & Fox, PLLC, of Washington, DC, argued for plaintiff/third party defendant-appellant. With him on the brief was BRYON L. PICKARD.

PAUL H. BERGHOFF, McDonnell Boehnen Hulbert & Berghoff, LLP, of Chicago, Illinois, argued for third party defendant-appellants. With him on the brief were JEREMY E. NOE and KURT W. RHODE. Of counsel on the brief was ELIZABETH A. WILEY, The Wiley Firm PC, of Austin, Texas.

MITCHELL G. STOCKWELL, Kilpatrick Townsend & Stockton LLP, of Atlanta, Georgia, argued for defendant/third party plaintiff-cross appellant, Mercedes-Benz USA, Inc. and MEGAN S. WOODWORTH, Dickstein Shapiro LLP, of Washington, DC, argued for defendant/third party plaintiff-cross appellant, Chrysler Group LLC. On the brief was FRANK C. CIMINO, JR., Dickstein Shapiro LLP, of Washington, DC, for defendant/third party plaintiff-cross appellant, Chrysler Group LLC. Of counsel were BONNIE M. GRANT, VAIBHAV P. KADABA, RONALD L. RAIDER and VANESSA M. SPENCER, Kilpatrick Stockton LLP, of Atlanta, Georgia, for defendants/third party plaintiffs-cross appellants.

————————————

Before PROST, SCHALL, and REYNA, *Circuit Judges.*

SCHALL, *Circuit Judge.*

These appeals come to us from the United States District Court for the Western District of Wisconsin. There, in two separate actions, Taurus IP, LLC ("Taurus") sued various defendants, alleging that their external websites infringed independent claim 16, as well as dependent claims 19, 22, 23, and 27, of Taurus's U.S. Patent No. 6,141,658 (the "'658 patent"). The '658 patent generally relates to "a computer system for managing product knowledge related to products offered for sale by a selling entity." '658 patent col. 2 ll. 52–54.

In the first action, Taurus sued DaimlerChrysler Corporation; Chrysler Financial, LLC; DaimlerChrysler Company, LLC; Chrysler Holding, LLC; Mercedes-Benz USA, Inc.; and Chrysler LLC for infringement (the "DaimlerChrysler Patent Suit"). In the second action, Taurus sued Hyundai Motor America; Reebok International, Ltd.; Polo Ralph Lauren Corporation; and Michelin North America, Inc. (the "Hyundai Patent Suit.").

In the DaimlerChrysler Patent Suit, the Chrysler-related defendants ("Chrysler") and Mercedes-related defendants ("Mercedes") asserted license and release defenses. They also asserted a breach of contract counterclaim against Taurus, and filed a contract claim against third-party defendants Orion IP, LLC; Constellation IP, LLC; Plutus IP Wisconsin, LLC; Plutus IP, LLC; and Erich Spangenberg.[1] *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 519 F. Supp. 2d 905, 911–12 (W.D. Wis.

---

[1]    At all times relevant to these appeals, Spangenberg served as the managing member of Taurus; Orion IP, LLC; Constellation IP, LLC; Plutus IP Wisconsin, LLC; and Plutus IP, LLC. *Taurus IP, LLC v. DaimlerChrysler Corp.*, 519 F. Supp. 2d 905, 913 (W.D. Wis. 2007).

2007) (the "*Jurisdiction Decision*"). In those claims and counterclaims, Chrysler and Mercedes alleged that, by filing the DaimlerChrysler Patent Suit, Taurus and/or certain third-party defendants violated various provisions of a 2006 patent licensing agreement (the "2006 Settlement Agreement") entered into by DaimlerChrysler Corporation and Orion IP, LLC ("Orion") to settle two prior patent infringement suits.[2]

On February 25, 2008, a few months after construing the relevant claim terms in the '658 patent, the district court entered summary judgment in the DaimlerChrysler Patent Suit, finding that neither Chrysler's nor Mercedes's accused websites infringed any of the asserted claims and finding claims 16 and 27 invalid as anticipated by a prior art patent. *Taurus IP, LLC v. DaimlerChrysler Corp.*, 534 F. Supp. 2d 849, 873–82 (W.D. Wis. 2008) (the "*Summary Judgment Decision*"); *see also Taurus IP, LLC v. DaimlerChrysler Corp.*, No. 07-cv-158, 2007 WL 5601495 (W.D. Wis. Nov. 9, 2007) (the "*Claim Construction Decision*"). Based on the *Summary Judgment Decision* and the *Claim Construction Decision* in the DaimlerChrysler Patent Suit, the parties to the Hyundai Patent Suit stipulated to dismissal of all pending claims and counterclaims to permit appeal of those two decisions. Subsequently, in a decision dated June 3, 2008, the district court found the DaimlerChrysler Patent Suit to be exceptional under 35 U.S.C. § 285. *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 559 F. Supp. 2d 947, 966–69 (W.D. Wis. 2008) (the "*Post-Trial Decision*"). As a result, the district court awarded damages in the amount of

---

[2] Based on the nature of the provision of the 2006 Settlement Agreement most relevant to these appeals, the claims and counterclaims filed by Chrysler and Mercedes will be collectively referred to as the "Breach of Warranty Suit."

$1,644,906.12, representing the costs incurred by Chrysler and Mercedes in defending against the suit. *See id.* at 969, 976.

The Breach of Warranty Suit presented the district court with a host of non-patent issues. First, the court was required to determine whether it could exercise personal jurisdiction over third-party defendant Spangenberg, a resident of Texas, and over third-party defendant corporations Orion; Constellation IP, LLC; and Plutus IP, LLC, all organized under the laws of Texas.[3] In a decision dated October 16, 2007, the court denied a motion to dismiss for lack of personal jurisdiction filed by the Texas Third-Party Defendants, finding that Taurus and the Texas Third-Party Defendants were alter egos of one another. *Jurisdiction Decision*, 519 F. Supp. 2d at 917–21. Alternatively, the court found personal jurisdiction over Spangenberg proper under Wisconsin's long-arm statute. *Id.* at 921–23.

After finding jurisdiction, the district court addressed, at the summary judgment stage, two separate challenges to the merits of the claims in the Breach of Warranty Suit. The district court granted a motion for summary judgment filed by Taurus and the Third-Party Defendants, finding that Articles 2.1 and 3.5 of the 2006 Settlement Agreement did not provide a release to the infringement alleged in the DaimlerChrysler Patent Suit. *Summary Judgment Decision*, 534 F. Supp. 2d at 870, 881 ¶ 9(a). In addition, the district court denied a motion for

---

[3] Taurus and third-party defendant Plutus IP Wisconsin, LLC are corporations organized under the laws of Wisconsin. Spangenberg; Orion; Constellation IP, LLC; and Plutus IP, LLC will be referred to, collectively, as the "Texas Third-Party Defendants." Plutus IP Wisconsin, LLC and the Texas Third-Party Defendants will be referred to, collectively, as the "Third-Party Defendants."

summary judgment filed by Taurus and the Third-Party Defendants, finding that triable issues of fact remained as to whether Orion or Spangenberg breached a warranty provision in Article 8.1(a)(iii) of the 2006 Settlement Agreement (the "Warranty Provision"). *Summary Judgment Decision*, 534 F. Supp. 2d at 871–873, 881 ¶ 10. Later, at trial, a jury determined that Orion had breached the Warranty Provision. *Post-Trial Decision*, 559 F. Supp. 2d at 957. Based on this finding, the district court awarded damages against Orion. *Id.* at 961–66, 976–77 ¶¶ 7, 11.

The trial in the Breach of Warranty Suit resulted in one additional ruling relevant to this appeal. The district court imposed sanctions on Orion and Spangenberg for pre-trial witness tampering. *Id.* at 957. Under the sanctions, Spangenberg and Orion were not permitted to put on evidence at trial to support their defense that neither Chrysler nor Mercedes relied on the Warranty Provision. *Id.* at 975.

In due course, the district court entered judgments in the DaimlerChrysler Patent Suit, the Breach of Warranty Suit, and the Hyundai Patent Suit.[4] Taurus now appeals various rulings from the DaimlerChrysler Patent Suit: (1) the district court's claim construction of various claim terms; (2) the judgment of invalidity of claims 16 and 27; (3) the judgment of noninfringement of asserted claims 16, 19, 22, 23, and 27; and (4) the finding of an exceptional case under 35 U.S.C. § 285 and the resulting award of damages.

---

[4] After oral argument, this court granted a joint motion to dismiss the appeals from the Hyundai Patent Suit. *Taurus IP, LLC v. Hyundai Motor N. Am.*, Nos. 2012-1474, -1477 (Fed. Cir. Apr. 25, 2013). This decision will not further address those appeals.

Orion and Spangenberg appeal various rulings from the Breach of Warranty Suit: (1) the denial of the motion to dismiss for lack of personal jurisdiction; (2) the denial of judgment as a matter of law reversing the jury's finding of breach of the Warranty Provision; (3) the denial of judgment as a matter of law regarding the award of damages and attorney fees based on the breach; and (4) the imposition of sanctions based on the finding of witness tampering.

Finally, Chrysler and Mercedes conditionally cross-appeal the ruling in the Breach of Warranty Suit that Articles 2.1 and 3.5 of the 2006 Settlement Agreement did not provide a release to the alleged infringement.

For the reasons set forth below, we rule as follows on the issues presented: **In the appeals from the DaimlerChrysler Patent Suit**, (1) we *affirm* the district court's constructions of all the disputed claim terms; (2) we *affirm* the judgment of invalidity of claims 16 and 27 of the '658 patent; (3) we *affirm* the judgment of noninfringement; and (4) we *affirm* the finding of an exceptional case under 35 U.S.C. § 285 and the resulting award of damages. **In the appeals from the Breach of Warranty Suit**, (1) we *affirm* the denial of the motion to dismiss for lack of personal jurisdiction over Orion and Spangenberg; (2) we *affirm* liability for breach of the Warranty Provision; (3) we *affirm* the award of damages consisting of attorney fees incurred by Chrysler and Mercedes in prosecuting the Breach of Warranty Suit, but *reverse* the award of damages consisting of attorney fees incurred by Chrysler and Mercedes in defending against the DaimlerChrysler Patent Suit; and (4) we *affirm* the imposition of evidentiary sanctions based on witness tampering. Based on these rulings, we do not reach the conditional cross-appeal.

I. THE DAIMLERCHRYSLER PATENT SUIT

A. BACKGROUND

1. THE PATENT AND THE ACCUSED PRODUCTS

As noted, the '658 patent generally relates to "a computer system for managing product knowledge related to products offered for sale by a selling entity." '658 patent col. 2 ll. 52–54. As shown in figure 1, reproduced below, the patent discloses a system consisting of a data source **104**, a data importer **102**, an editor **106**, a user system **108**, a data model **110**, and data exporters **112**.



FIG. 1

The disclosed purpose of the system is to (i) import various sources of data into a "data warehouse," (ii) enable management of that data by creating relationships between various categories of data, known as "objects," and (iii) then export the appropriate type of data to users with access rights. *See id.*, col. 4 l. 28 – col. 5 l. 6. Utilizing a user system **108**, a "user" can control editor **106** to create hierarchical relationships between objects within data model **110**. *Id.*, col. 5 ll. 7–32. The patent explicitly discloses that more than one user system **108** can be coupled to editor **106**, with, for example, each department

in a corporation operating one or more user systems. *See id.*, col. 5 ll. 13–17. The system thus enables an entity to hierarchically organize data related to various product lines, that data potentially including the various components used in each product line and those components' characteristics. Figure 18, shown below, depicts an example hierarchy, with arrows representing the relationships created between various objects, shown in the ovals. *See id.*, col. 5 ll. 32–65.



## FIG. 18

Each object may represent customer information, product information, or configuration information. *Id.*, col. 5 ll. 37–40. The patent discloses that "editor **106** uses rules governing the objects, such as relationships and other rules governing the objects, to construct a GUI [or

graphical user interface] for presenting the information to a user." *Id.*, col. 5 l. 66 – col. 6 l. 2. One of the interfaces disclosed in the '658 patent, shown in figure 17, reproduced below, allows a user to define "rules that describe relationships between information." *Id.*, col. 11 ll. 32–65.



FIG. 17

With this interface, a user can create the relationships to build a hierarchical data structure like the one depicted in figure 18, shown above.

In the complaint in the DaimlerChrysler Patent Suit, Taurus accused both the internal websites (i.e., dealer-to-dealer sales portals) and various external public websites of both Chrysler and Mercedes of infringing independent claim 16, as well as dependent claims 19, 22, 23, and 27 of the '658 patent. *Summary Judgment Decision*, 534 F. Supp. 2d at 861–64, 873, 881–82. At issue with regard to

the external websites was functionality allowing someone visiting an automobile manufacturer's website (a "web surfer"[5]) to configure a hypothetical vehicle with certain optional equipment, to then save that configuration information to his or her profile, and to then identify the nearest dealership, if any, with such a vehicle in stock. *See Summary Judgment Decision*, 534 F. Supp. 2d at 862–64. Independent claim 16 recites as follows, with claim terms at issue shown in italics:

16. A computer system implemented method for managing product knowledge comprising a plurality of data items related to products offered for sale by a selling entity, the computer system including a memory arrangement and at least one processing unit, the method comprising:

defining a data model of data categories, the data model establishing relationships between data categories;

receiving in the computer system one or more particular data items corresponding to one or more of the data categories;

receiving *user-defined relationship information* for the particular data item, the relationship information relating the particular data item to one or more other data items; and

presenting the product knowledge, including information about the particular data item, to a *user* of the system in a manner established by the data model and the user-defined relationship;

---

[5] In the *Summary Judgment Decision*, the district court used the term "web surfer" to identify a generic member of the public capable of visiting Chrysler's or Mercedes's external websites. For consistency, we will do the same.

> wherein the data model is constructed from one or more data instance items interconnected using the *user-defined relationship items* for each data instance item.

'658 patent col. 15 ll. 5–26.

### 2. PROCEEDINGS IN THE DISTRICT COURT

In its *Claim Construction Decision*, the district court construed the claim terms italicized above as follows: (1) "user" means "a person who is capable of creating and editing user-defined relationship information;" (2) "user-defined relationship information" means "the set of rules specified by the user that governs the relationship between data items within the data model;" and (3) "user-defined relationship items" means "individual rules specified by the user that belong to and interconnect data instance items." *Claim Construction Decision*, 2007 WL 5601495 at *12.

Based on its constructions of the above terms, and based on its findings as to the accused external websites, the district court granted summary judgment in favor of Chrysler and Mercedes, finding that use of their external websites does not infringe any of the asserted claims. *Summary Judgment Decision*, 534 F. Supp. 2d at 873–75; *see also id*. at 881–82 ¶ 11 (granting summary judgment of noninfringement based on use of the internal websites).[6] The district court based its conclusion on two independent grounds: (1) that Taurus had failed to show

---

[6] As noted in the *Summary Judgment Decision*, Taurus had previously dropped its allegations of infringement based on Chrysler's internal websites. *See Summary Judgment Decision*, 534 F. Supp. 2d at 873. The reasoning as to noninfringement by Mercedes's internal websites is unclear. Infringement by internal websites is not at issue in this appeal.

the presence of a "user" of the external websites, as required by the fourth step of claim 16, which recites "presenting the product knowledge . . . to a *user* of the system" and (2) that Taurus had failed to show that the accused websites "receiv[e] *user-defined relationship information*" as required by the third step of claim 16. *See id.* at 873.

More specifically, the district court found that, by accessing the accused external websites, a web surfer does not "create, edit or specify rules; in every instance, [Taurus] has failed to show that a web surfer does any more than submit variables for the system to process in accordance with predetermined rules." *Id.* at 874. In other words, a web surfer is not a "user" as recited in claim 16 because a web surfer is not "capable of creating and editing" "the set of rules specified by the user that governs the relationship between data items within the data model." A web surfer is only capable of using rules already predetermined by others.

In the *Summary Judgment Decision,* the district court also found claims 16 and 27 anticipated under former 35 U.S.C. § 102(e)(2)[7] by U.S. Patent No. 5,825,651 (the "Trilogy patent")[8]. *See Summary Judgment Decision,* 534 F. Supp. 2d at 875–81. The Trilogy patent discloses "a framework for defining a systems [sic] by defining the components of the system using elements contained in a parts catalog and defining relationships between the

---

[7] The relevant provisions of § 102(e)(2) were reorganized into newly designated § 102(d)(2) when certain aspects of the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, took effect on March 16, 2013. Because this case was filed before that date, we will refer to the pre-AIA version of § 102.

[8] To avoid confusion with the '658 patent, we will reference this patent, as did the district court, by the original assignee, Trilogy Development Group, Inc.

components of a system." Trilogy patent, abstract. The written description of the Trilogy patent summarizes how relationships can be defined:

> Relationships can be defined between the parts in a product definition. A relationship relates a first set of parts with a second set of parts. A set can include multiple parts. The incorporation of parts in a set can be arbitrary. That is, a multi-part set can contain parts that are otherwise unrelated. For example, a set can contain parts such as an engine, sun roof and a color. These parts seem to be unrelated, however, it is possible to combine them into a relationship set for purposes of forming a relationship using the present invention.

*Id.*, col. 2 ll. 12–21.

In its analysis, the district court first rejected Taurus's argument that the subject matter of the '658 patent—filed on September 10, 1997—was invented prior to September 3, 1996, the filing date of the Trilogy patent. *See Summary Judgment Decision*, 534 F. Supp. 2d at 877–78. In so doing, the district court found that a lengthy document filed with the '658 patent and referred to as "Appendix A" therein, *see* '658 patent col. 13 ll. 50–52, did not provide evidence of conception and reduction to practice sufficient to predate the Trilogy patent. *See Summary Judgment Decision*, 534 F. Supp. 2d at 877–78. The district court relied on the fact that, although Appendix A has a date stamp showing it was created on June 10, 1996, almost every page has a stamp showing it was modified on December 11, 1996, more than three months after the filing date of the Trilogy patent, September 3, 1996. *See Summary Judgment Decision*, 534 F. Supp. 2d at 877–78.

After concluding that the Trilogy patent was, in fact, prior art, the district court found that Chrysler and Mercedes had demonstrated that that patent discloses

each limitation in claims 16 and 27. *Summary Judgment Decision*, 534 F. Supp. 2d at 878–81. Relevant to this appeal, the district court found that the Trilogy patent's disclosure of "sets of parts" and the related "groups of parts" with defined relationships between sets of parts satisfied the requirement for "data categories" as recited in the first and second steps of claim 16 of the '658 patent. *Summary Judgment Decision*, 534 F. Supp. 2d at 878–79.

In the *Post-Trial Decision*, the district court found the DaimlerChrysler Patent Suit to be exceptional under 35 U.S.C. § 285. *Post-Trial Decision*, 559 F. Supp. 2d at 966–69. Specifically, the court found Taurus's pre-filing investigation to be deficient and determined that Taurus improperly "prolonged the litigation in bad faith" after construction of the disputed claim terms. *Id.* at 967–68. In addition, the district court found that the DaimlerChrysler Patent Suit was carried out "vexatiously" because Spangenberg set up Taurus for "jurisdictional reasons" and asserted the '658 patent against Chrysler and Mercedes rather than discuss his contentions of infringement with them. *Id.* at 968. The district court also relied on its findings that Taurus and "Spangenberg's other companies" filed repetitive motions and that, in the Breach of Warranty Suit, Spangenberg engaged in witness tampering after Taurus had left the case. *Id.* The district court found that Taurus did not challenge the amount of attorney fees requested, and awarded damages in the amount of $1,644,906.12, the cost of defending the DaimlerChrysler Patent Suit. *Id.* at 969, 976.

Taurus appeals (1) the construction of various claim terms, (2) the judgment of invalidity of claims 16 and 27, (3) the judgment of noninfringement of asserted claims 16, 19, 22, 23, and 27, and (4) the finding of an exceptional case under 35 U.S.C. § 285 and the resulting award of damages. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

### B. Discussion

#### 1. Claim Construction

This court reviews a district court's claim construction *de novo*. *See Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).

##### A. "User"

On appeal, Taurus repeats its prior argument that either no construction is necessary for this term or that it should be construed as "a person who uses the claimed computer system." *See Claim Construction Decision*, 2007 WL 5601495 at *5. As noted, the district court construed "user" as "a person who is capable of creating and editing user-defined relationship information." *Id.* at *12. Taurus argues that the district court's construction "effectively limited 'users' of the system to those capable of 'creating and editing' rules, rather than those simply capable of 'creating and editing' information used by the system to define a rule." Although acknowledging that "the patent is generally described from the viewpoint of a database manager," Taurus argues that there is no indication that the applicants imparted a specific or limiting definition to the generic term "user." In other words, Taurus asserts that the district court improperly limited the term to a preferred embodiment.

Chrysler and Mercedes respond that the preamble of claim 16 recites a method for "*managing* product knowledge," and that all examples of "users" in the written description are internal personnel, such as "database administrators" and "data entry clerks," that are capable of creating and editing user-defined relationship information.

We agree with Chrysler and Mercedes and conclude that the district court properly construed "user" as "a person who is capable of creating and editing user-defined relationship information." As discussed above, the lan-

guage of claim 16 makes clear that the "user" must define the relationship information. Further, the written description firmly supports this construction, only disclosing "users" with sufficient internal access to the data model to allow the creation and editing of relationship information. For example, the '658 patent discloses that "[e]ach type of user is responsible for certain goals of the system" such as "system management" or "data management." '658 patent col. 12 ll. 2–11. Similarly, the patent discloses that "the system can ensure that each type of user can perform the tasks assigned to him or her, while maintaining database security." *Id.*, col. 13 ll. 45–48.

The term "user" cannot be construed in a vacuum, as required by Taurus's proposed construction. Instead, it must be construed in light of the written description in which it resides. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc) ("'We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history.'") (quoting *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005)). As admitted by Taurus, the invention is described from the viewpoint of the database manager, not from the viewpoint of a web surfer. Because Taurus's proposed construction of "user" is improperly broad, we affirm the construction of the district court.

### b. "USER-DEFINED RELATIONSHIP INFORMATION"

Taurus argues, as it did to the district court, that this term should be construed as "input from a user of the computer system that is used by the system to define a rule between two or more instance items." *See Claim Construction Decision*, 2007 WL 5601495 at *3. As noted, the district court construed "user-defined relationship information" as "the set of rules specified by the user that governs the relationship between data items within the data model." *Id*. at *12. Taurus's proposed construction

and the district court's construction differ in that they identify different stages of the rule-building process. Specifically, Taurus's proposed construction identifies the keystrokes and other related "inputs" by a user that are received by the system while a rule is being defined. In contrast, the district court's construction identifies the result of those keystrokes and other inputs, i.e., the "set of rules specified by the user." Taurus asserts that the district court's construction is inconsistent with figure 17 of the '658 patent and other disclosures showing that a wide variety of information can be used in creating a rule.

Chrysler and Mercedes respond that the district court correctly construed "user-defined relationship information" and that, in construing the term, the district court did not ignore figure 17, but instead relied upon it to support its construction.

We conclude that the district court properly construed "user-defined relationship information" as "the set of rules specified by the user that governs the relationship between data items within the data model." The specification does not support Taurus's proposed construction, which requires the system, not the user, to define the rules between various data items. In the discussion of the "RuleBuilder" interface shown in figure 17, the '658 patent clearly discloses that the user, not the system, defines the rules:

> [U]sing the dialog box 1700, the *user can define a relationship* between one type of data object representing product lines and another representing technical specifications. . . . A text entry box 1702 allows the *user to enter rules* in textual form. Alternatively, the user can use a variety of active screen regions to reduce the number of keystrokes involved in defining a rule.

'658 patent col. 11 ll. 34–43 (emphasis added).

Moreover, Taurus's proposed construction conflicts with the plain language of claim 16. By accepting Taurus's proposed construction, the district court would have effectively rewritten the claim language from "user-defined relationship information" to "*system*-defined relationship information." *See K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee."). We affirm the district court's construction of this term.

### c. "USER-DEFINED RELATIONSHIP ITEMS"

As acknowledged by Taurus, the district court did not rely on the construction of this term in the *Summary Judgment Decision*. *See* Taurus Opening Br. 33 n.7. On appeal, Taurus argues for a different construction "in order to obtain a ruling for guidance on remand." *Id*. Because we do not remand on any issue implicating the construction of this term, we will not address Taurus's arguments.

For these reasons, we affirm the district court's constructions of "user" and "user-defined relationship information" and do not address the construction of "user-defined relationship items."

### 2. INVALIDITY

We now address the district court's findings on validity, namely (1) that the invention claimed in the '658 patent does not predate the Trilogy patent and (2) that claims 16 and 27 of the '658 patent are invalid as anticipated by the Trilogy patent. Former 35 U.S.C. § 102(e)(2) provides grounds for invalidating the claims of an issued patent if "[t]he invention was described in . . . a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent . . . ." In other words, the claims of a patent are invalid if they read on the invention disclosed in a differ-

ent U.S. patent application that was filed before, but issued after, the filing date of the inventor's patent. Anticipation is a question of fact, and a district court's finding on this issue is reviewed for clear error. *See Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1082 (Fed. Cir. 2008). The issue of the conception date of an invention is a legal conclusion based on underlying factual findings. *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1063 (Fed. Cir. 2005). We apply the law of the regional circuit when reviewing a district court's grant of summary judgment. *See Teva Pharm. Indus., Ltd. v. AstraZeneca Pharm. LP*, 661 F.3d 1378, 1381 (Fed. Cir. 2011). The Seventh Circuit reviews a grant of summary judgment *de novo*. *See Cummins, Inc. v. TAS Distrib. Co.*, 700 F.3d 1329, 1335 (Fed. Cir. 2012) (citing *Staats v. Cnty. of Sawyer*, 220 F.3d 511, 514 (7th Cir. 2000)).

a. DATE OF INVENTION OF THE '658 PATENT

As to the date of invention, Taurus argues that a jury could have reasonably found that Appendix A represents either a complete data model created using the invention claimed in the '658 patent or a data model upon which the complete invention was reduced to practice. Taurus highlights the testimony of inventor Jerome Johnson—who stated that Appendix A would not have been created before he conceived of the invention in the '658 patent—as direct evidence of a conception date prior to June 10, 1996. Further, Taurus asserts that alleged factual disputes about the inventor's testimony and Appendix A were improperly decided on summary judgment.

Chrysler and Mercedes respond that Appendix A shows a modification date of December 11, 1996, more than three months after the September 3, 1996, filing date of the Trilogy patent, and emphasize that the inventors had no specific recollections regarding a conception date. According to Chrysler and Mercedes, Taurus (1) did not prove that Appendix A met all the limitations of

claims 16 and 27, (2) ignored the corroboration require-ment, and (3) failed to prove diligence in reducing the invention to practice.

After an accused infringer has put forth a prima facie case of invalidity, the burden of *production* shifts to the patent owner to produce sufficient rebuttal evidence to prove entitlement to an earlier invention date. *See Innovative Scuba Concepts, Inc. v. Feder Indus., Inc.*, 26 F.3d 1112, 1115 (Fed. Cir. 1994). The ultimate burden of proving invalidity by clear and convincing evidence—i.e., the burden of *persuasion*—however, remains with the accused infringer. *See id.*

"[P]riority of invention 'goes to the first party to re-duce an invention to practice unless the other party can show that it was the first to conceive the invention and that it exercised reasonable diligence in later reducing that invention to practice.'" *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996) (quoting *Price*, 988 F.2d at 1190). Thus, to remove the Trilogy patent as a prior art reference, Taurus needed to either prove (1) a conception and reduction to practice before the filing date of the Trilogy patent or (2) a conception before the filing date of the Trilogy patent combined with diligence and reduction to practice after that date. *See Singh v. Brake*, 317 F.3d 1334, 1340 (Fed. Cir. 2003); *see also* 37 C.F.R. § 1.131(b).[9] In either scenario, Taurus had to prove a conception date earlier than September 3, 1996—the filing date of the Trilogy patent. The only such evidence presented by Taurus, however, was (1) the creation date of June 10, 1996, printed on Appendix A, and (2) Mr. Johnson's testimony. Based on this evidence, a reasona-ble juror could not find that the '658 patent predated the Trilogy patent. We address each potential basis in turn.

_____

[9] Taurus does not address diligence at all; it relies solely on the first of these two options.

First, although Appendix A included a *creation* date of June 10, 1996, nearly every page also included a *modification* date of December 11, 1996—more than three months after the filing date of the Trilogy patent. Based on that modification date, a juror could only conclude with reasonable certainty that Appendix A was in its current form *no later than* December 11, 1996. Indeed, as admitted by Taurus, "[t]here is no evidence of what changes, if any, were made between the creation date [of June 10, 1996] and the last edit date [of December 11, 1996]." *See* Taurus Opening Br. 20 n.4. In other words, no evidence precludes the possibility that Taurus created Appendix A with little or no text on June 10, 1996, and "modified" it, by adding all or most of the text now present, some time on or before December 11, 1996. This does not provide sufficient evidence for a reasonable juror to find a conception date prior to the filing date of the Trilogy patent.

Further, even assuming Appendix A was in its present form prior to September 3, 1996, Taurus failed to demonstrate how Appendix A satisfies all the limitations recited in claims 16 and 27, as necessary to demonstrate conception. *See Singh*, 317 F.3d at 1340 ("A conception must encompass all limitations of the claimed invention . . . ."). Similarly, Taurus has not proven that Appendix A represents an actual reduction to practice of the entire process recited in claims 16 and 27. *See Scott v. Koyama,* 281 F.3d 1243, 1247 (Fed. Cir. 2002) ("'A process is reduced to practice when it is successfully performed.'") (quoting *Corona Cord Tire Co. v. Dovan Chem. Corp.,* 276 U.S. 358, 383 (1928)). Instead, Taurus merely states that a reasonable juror *could* find that Appendix A was either created using the invention or represents conception before a later reduction to practice. Taurus fails, however, to set forth an evidentiary basis for that finding.

As to the second potential basis, Mr. Johnson's testimony allegedly supporting an earlier invention date is both limited and conclusory. Although he could not

pinpoint the precise date of conception and did not know who created Appendix A, he nevertheless summarily concluded, during direct examination by Taurus's counsel, that Appendix A would not have been created before conception:

> Q. And is [Appendix A] something that would have been created before you conceived of the invention of the '658 patent?
>
> A. No.

J.A. 4462 at 150:1–4; *see also* J.A. 4461 at 148:25–149:25 (addressing the date of conception and who created Appendix A).

Even if this testimony were sufficient to support an earlier invention date, it lacks corroboration, which is required by this court's case law. *See Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000) ("It is well-established that when a party seeks to prove conception via the oral testimony of a putative inventor, that party must proffer evidence corroborating that testimony. This rule addresses the concern that a party claiming inventorship might be tempted to describe his actions in an unjustifiably self-serving manner in order to obtain a patent or to maintain an existing patent."). Instead of corroborating Mr. Johnson's testimony, Appendix A serves as the sole basis for it. Indeed, independent of that document, neither inventor had any recollection of the date of invention. For the reasons set forth above, however, Appendix A does not independently support an earlier invention date; it therefore cannot corroborate Mr. Johnson's testimony.

Thus, we conclude that the district court did not err in determining that no reasonable juror could find that Taurus had proven an earlier date of invention for the '658 patent. *See Summary Judgment Decision*, 534 F. Supp. 2d at 877–78. Because the Trilogy patent is prior

art under former 35 U.S.C. § 102(e)(2), we now address the district court's finding of anticipation.

### b. ANTICIPATION

The district court found, on summary judgment, that the Trilogy patent anticipated claims 16 and 27 of the '658 patent because it disclosed every step recited in those claims.[10] *Summary Judgment Decision*, 534 F. Supp. 2d at 878–81. According to Taurus, the district court erred in finding claims 16 and 27 anticipated because the Trilogy patent does not disclose "data categories," as recited in the first and second steps in claim 16. *See* '658 patent col. 15 ll. 10–14. Taurus argues that whether disclosures of "set of parts" or "group of parts" in the Trilogy patent, *see, e.g.*, Trilogy patent, col. 2 ll. 12–37, satisfies the requirement for "data categories" was a disputed issue of material fact that the district court improperly resolved on summary judgment.

Chrysler and Mercedes respond that the sole issue— the scope of the term "data categories"—is legal, not factual, in nature. In addition, Chrysler and Mercedes assert that, during the claim construction hearing, counsel for Taurus argued for a broad understanding of the term "data categories."

Although anticipation is a question of fact, a district court may, on summary judgment, invalidate a patent claim as anticipated by a prior art reference if the patentee does not identify a genuine issue of material fact to avoid summary judgment. *See Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1321 (Fed. Cir. 2008); *see*

---

[10] Independent claim 16 is quoted above. Dependent claim 27 recites "[a] method, according to claim 16, further comprising using a graphic user interface configured and arranged to facilitate creating the user-defined relationship item."

*also Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001) ("Summary judgment is proper if no reasonable jury could find that the patent is not anticipated."). Here, summary judgment was proper because Taurus failed to set forth any specific facts precluding summary judgment. *See* Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (noting that "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial") (internal quotations omitted). Taurus's assertion that unspecified factual disputes remain cannot preclude summary judgment. *See Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005) (finding that attorney argument did not demonstrate a genuine issue of material fact sufficient to avoid summary judgment).

Further, although the term "data categories" was not construed, Taurus did advocate a broad understanding of that term, which the district court paraphrased as a "general grouping of information shown externally." *See Summary Judgment Decision*, 534 F. Supp. 2d at 879 (citing testimony from the claim construction hearing in which counsel for Taurus stated: "Data categories is just what you see on the interface when you're on the screen and I see a category and it says you can pick red, yellow, or green"). We see no error in the district court's conclusion as to the scope of "data categories." In addition, we agree with the district court that the Trilogy patent discloses relationships between general groups of information, such as automotive parts. *See* Trilogy patent, col. 2 ll. 12–37. Taurus has not set forth evidence showing error in either of these conclusions. Because a reasonable jury could only have found claims 16 and 27 anticipated by the Trilogy patent, we affirm summary judgment of invalidity.

### 3. NONINFRINGEMENT

We now turn to the district court's ruling, on summary judgment, that neither Chrysler's nor Mercedes's external websites infringe the asserted claims of the '658 patent.[11] Taurus argues that the district court erred in determining that a web surfer cannot satisfy the requirement for a "user" under the court's construction of that term. In addition, Taurus argues that the district court did not explicitly exclude web surfers from the scope of "users" until the *Summary Judgment Decision*, and that, by doing so, the court improperly took that issue from the jury. In response, Chrysler and Mercedes argue that Taurus identified no evidence that a web surfer can create and edit rules that "govern the relationship" between data items, as required by the district court's claim construction.

We apply the law of the regional circuit to review the grant of summary judgment, *see Teva*, 661 F.3d at 1381, and thus review this issue without deference, *see Cummins,* 700 F.3d at 1335. Summary judgment should be granted "if the movant shows that there is no genuine

---

[11] Although we affirm the invalidity of claims 16 and 27, remaining asserted claims 19, 22, and 23 have not been found invalid. This section addresses the potential infringement of claims 19, 22, and 23, all of which depend, either directly or indirectly, from independent claim 16. Because, for reasons discussed in this section, Chrysler's and Mercedes's websites do not practice certain limitations of claim 16, those websites cannot practice claims 19, 22, and 23. *See Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed . . . .").

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

On appeal, Taurus has failed to identify any specific factual issues that would preclude summary judgment. *See TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369–70 (Fed. Cir. 2002) ("Whether the accused device contains an element corresponding to each claim limitation or its equivalent is a question of fact, which, on summary judgment, is a question we review to determine whether a material factual issue remains genuinely in dispute."). Instead, Taurus merely disagrees with the district court's legal conclusion that web surfers do not fall within the court's construction of "users."

We see no error in that legal conclusion, and agree that Taurus "has failed to show that a web surfer does any more than submit variables for the system to process in accordance with predetermined rules." *See Summary Judgment Decision*, 534 F. Supp. 2d at 874. In other words, as argued by Chrysler and Mercedes, Taurus has not identified any evidence that web surfers can create or edit the rules that govern the relationships between data items, as required by the court's claim construction. *See Novartis Corp. v. Ben Venue Labs., Inc.,* 271 F.3d 1043, 1046 (Fed. Cir. 2001) ("Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case."). Because Taurus has failed to identify any genuine issue of material fact precluding summary judgment and because we discern no error in the district court's legal conclusion, we affirm the finding of no infringement.

## 4. EXCEPTIONAL CASE

We now turn to the last issue on appeal from the DaimlerChrysler Patent Suit, the finding of an exceptional case under 35 U.S.C. § 285 and the award of attorney fees to Chrysler and Mercedes for defending against the allegations of infringement in that suit. Taurus asserts that the district court erred in finding an exceptional case because Taurus argued infringement both in good faith and as supported by expert testimony, and because its counsel had a duty to represent it "zealously." In addition, Taurus notes that, since the finding of an exceptional case, this court has reversed two of the decisions relied on by the district court for the proposition that a party's decision to assert infringement after an adverse claim construction may support an exceptional case finding. Taurus also argues that it had a non-frivolous infringement theory here because the claim construction was vague until the issuance of the *Summary Judgment Decision*. Further, Taurus highlights that it dropped infringement allegations against the internal websites.

Chrysler and Mercedes respond that Taurus's entire case has been frivolous. In addition, they argue that the district court's claim construction ruling should have caused Taurus to reevaluate and pare down its infringement case. Further, Chrysler and Mercedes note that Taurus has not challenged the amount of the award of attorney fees flowing from the exceptional case finding.

When assessing whether to award attorney fees under 35 U.S.C. § 285, a district court engages in a two-step inquiry. The court must first determine whether the prevailing party has proved, by clear and convincing evidence, that the case is exceptional. *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012), *reh'g and reh'g en banc denied* (2012). If the court finds the case exceptional, it must determine whether an award

of attorney fees is appropriate, and, if so, the amount of that award. *Id.* at 916.

Absent misconduct in litigation or in securing the patent, a case may be found exceptional under § 285 only if (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless. *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). Subjective bad faith by the offending party can be upheld on review if, despite the lack of an explicit finding by the district court, other findings of fact are compatible with, and only with, that view. *See Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810–11 (Fed. Cir. 1990). There exists a "presumption that the assertion of infringement of a duly granted patent is made in good faith." *Brooks Furniture*, 393 F.3d at 1382. Factual findings regarding subjective bad faith are reviewed for clear error. *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1310 (Fed. Cir. 2012), *reh'g and reh'g en banc denied*, 701 F.3d 1351 (2012).

To be objectively baseless, the patentee's assertions—whether manifested in its infringement allegations or its claim construction positions—"must be such that no reasonable litigant could reasonably expect success on the merits." *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008), *quoted in iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011). As a question of law, this court reviews a district court's determination of whether a party's claim or defense in a patent case is objectively baseless without deference. *Highmark*, 687 F.3d at 1308–09.

Because of the reputational and economic impact of sanctions, this court must carefully examine the record when reviewing an exceptional case finding. *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 953 (Fed. Cir. 2010). We are, however, also mindful of the fact that the district court,

with its first-hand knowledge of the parties and their positions, should not be unduly second-guessed. *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324 (Fed. Cir. 2011), *reh'g and reh'g en banc denied* (2011).

Having carefully considered the record before us, we conclude that the district court properly found the DaimlerChrysler Patent Suit to be exceptional. In reaching this conclusion, we find sufficient basis in the district court's findings that Taurus improperly asserted and maintained its positions in the litigation. *See Post-Trial Decision*, 559 F. Supp. 2d at 967–68. We need not rely on the findings related to vexatious litigation or witness tampering. *See id.* at 968. Rather, no reasonable litigant in Taurus's position could have expected a finding that a web surfer accessing the accused external websites satisfied the requirement for a "user," as recited in claim 16. Although reasonable minds can differ on claim construction positions, Taurus's proposed constructions of "user," and the related terms discussed above, fall below the threshold required to avoid a finding of objective baselessness. *See Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012) (citing *iLOR*, 631 F.3d at 1378).

Taurus proposed that "user" either not be construed at all, or effectively not construed, as "a person who uses the claimed computer system." *See Claim Construction Decision*, 2007 WL 5601495 at *5. As discussed above, however, the written description provides no support for Taurus's unreasonably broad construction and instead limits the term to those with sufficient *internal* access to the data model to allow the creation and editing of relationship information. When patentees have sought unreasonable claim constructions divorced from the written description, this court has found infringement claims objectively baseless. *See, e.g., MarcTec*, 664 F.3d at 919 ("Because the specification and prosecution history clearly refute [the patentee's] proposed claim construction, the

district court did not err in finding that [the patentee's] infringement claims were objectively baseless."); *Eon-Net*, 653 F.3d at 1326 ("[B]ecause the written description clearly refutes [the patentee's] claim construction, the district court did not clearly err in finding [the patentee] pursued objectively baseless infringement claims."); *see also Raylon*, 700 F.3d at 1368–71 (reversing denial of Rule 11 sanctions and remanding to reassess the denial of an exceptional case under § 285, finding that the patentee relied on a proposed construction that was "contrary to all the intrinsic evidence and does not conform to the standard canons of claim construction").

We are not persuaded by Taurus's argument that the claim construction of "user" was vague until issuance of the *Summary Judgment Decision*. When read in light of the specification, the district court's construction provided clear limitations on the scope of "user." Indeed, as the briefing to this court demonstrates, Taurus appears to have understood, but merely disagreed with the court's construction. *See* Taurus Opening Br. 34 (asserting that the claim construction "effectively defined 'user' as the programmer, not a user of the program").

Taurus is correct that this court reversed two district court decisions relied on in the *Post-Trial Decision* for the proposition that "Taurus's decision to proceed in the face of this court's constructions prolonged the litigation in bad faith." *See Post-Trial Decision*, 559 F. Supp. 2d at 968; *see also DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1339 (Fed. Cir. 2009) (reversing, in relevant part, 534 F. Supp. 2d 244 (D. Mass 2008)); *Medtronic Navigation*, 603 F.3d at 954 (reversing 2008 WL 410413 (D. Colo. Feb. 12, 2008)). Those reversals did not, however, disturb the rule that a case can be found exceptional when a party prolongs litigation in bad faith. *See MarcTec*, 664 F.3d at 916 ("Where a patentee 'prolongs litigation in bad faith, an exceptional finding may be warranted.'") (quoting *Computer Docking Station Corp. v. Dell, Inc.*, 519

F.3d 1366, 1379 (Fed. Cir. 2008)). While an adverse claim construction generally cannot, alone, form the basis for an exceptional case finding, this court's decisions in *DePuy Spine* and *Medtronic Navigation* do not undermine the rule that a party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims, especially after an adverse claim construction. *See Medtronic Navigation*, 603 F.3d at 954 ("The salient inquiry is whether Medtronic's claims were so lacking in merit that [the plaintiff] was legally obligated either to abandon its case altogether or to limit itself to challenging the district court's claim construction order on appeal."). In both cases, this court reversed because it determined that the arguments posited were not, in fact, baseless. *See id.* at 959; *see also DePuy Spine*, 567 F.3d at 1339 (reversing an exceptional case finding because "there is no indication, much less a finding, that [the sanctioned party's] arguments were baseless, frivolous, or intended primarily to mislead the jury"). For the reasons set forth above, such is not the case here. Thus, the reversals in *DePuy Spine* and *Medtronic Navigation* do not carry the day for Taurus.

We also conclude that the district court did not clearly err in implicitly finding subjective bad faith. Although the district court did not explicitly state the facts supporting a finding of subjective bad faith, it did make sufficient factual findings for this court to uphold the implicit finding. *See MarcTec*, 664 F.3d at 917–18; *Eltech Sys.*, 903 F.2d at 810 ("Though the court did not expressly find that [the plaintiff] *knew* its suit was baseless, many of its findings are compatible with and only with that view."). Specifically, the district court found that:

- Although the '658 patent, entitled "Computer System and Method for Managing Sales Information," is directed to database administration, Taurus asserted claims against defendants on the theory that an

internet user of their website could be a "user" of that system. At trial, Spangenberg described the '658 patent as "go[ing] to the server side of the equation, not the user side of the equation," and "related to the data management that was occurring behind the websites."

- On September 9, 2007, [the district court] construed certain claim terms, including "user," which [was] construed to mean "a person who is capable of creating and editing" a set of rules "that governs the relationship between data items within the data model." Taurus continued to assert its infringement claims, contending at summary judgment that an internet user was a "user" of certain of defendants websites because he could enter a zip code and preferred vehicle configuration to search for products in his area or view "configured" vehicles. [The district court] concluded that Taurus had failed to show that internet users were "users" as required by the only independent claim asserted by Taurus, because the internet user could do no more than plug in variables to be processed in accordance with predefined rules.

*Post-Trial Decision*, 559 F. Supp. 2d at 966–67 (internal citations omitted). Each of these findings supports the court's implicit conclusion that Taurus subjectively knew that the DaimlerChrysler Patent Suit lacked a reasonable basis and was, therefore, pursued and maintained in bad faith. *See MarcTec*, 664 F.3d at 918 ("After careful consideration and review of the record, we agree with the district court that [the patentee's] proposed claim construction, which ignored the entirety of the specification and the prosecution history, and thus was unsupported by

the intrinsic record, was frivolous and supports a finding of bad faith.").

We are not persuaded by Taurus's argument that it lacked bad faith because it dropped its infringement claims against the internal websites. Although Taurus was correct (and required) to abandon any infringement claims that had no basis in fact or law, that abandonment does not permit Taurus to maintain other infringement claims that fail to meet or exceed a reasonable threshold. *See Raylon*, 700 F.3d at 1368 (citing *iLOR*, 631 F.3d at 1378). In other words, doing something required of it does not grant Taurus leave to do something not permitted. In addition, although counsel for Taurus is generally correct that it can and should represent its client "zealously," attorneys are always charged with the "obligation to file cases reasonably based in law and fact and to litigate those cases in good faith." *See Eon-Net*, 653 F.3d at 1328.

Because the findings of the district court support the conclusion that this case was exceptional under 35 U.S.C. § 285, we affirm that ruling. As Taurus does not assert that the amount of attorney fees was improper, we do not address that issue.

## II. THE BREACH OF WARRANTY SUIT

### A. BACKGROUND

#### 1. THE NATURE OF THE CLAIMS

The Breach of Warranty Suit included a series of defenses raised and counterclaims filed by Chrysler (and, in some instances, Mercedes) in response to the DaimlerChrysler Patent Suit. The only aspect of the Breach of Warranty Suit at issue in this appeal, however, is a single counterclaim asserting that Orion breached the Warranty Provision found in Article 8.1(a)(iii) of the 2006 Settlement Agreement (the "Breach of Warranty Counterclaim").

DaimlerChrysler Corporation and Orion entered into the 2006 Settlement Agreement to settle two prior patent infringement suits filed by Orion against Chrysler and Mercedes, respectively, in the United States District Court for the Eastern District of Texas (the "Texas Suits"). *Post-Trial Decision*, 559 F. Supp. 2d at 955–56. Prior to filing the Texas Suits, Orion had, in February of 2004, acquired the rights to fourteen patents, including the '658 patent. *Id.* at 955. Although Orion asserted some of these newly acquired patents in the Texas Suits, it did not assert the '658 patent. *Id.* Instead, Orion transferred that patent to a company called Caelum IP on August 30, 2004, five days after Orion filed the first of the Texas Suits. *Id.* at 956. Documentation reflecting this transfer was produced to Chrysler in discovery in the Texas Suits. *See id.*

In early February of 2006, after a merger with Caelum IP, Constellation IP acquired rights to the '658 patent, with the final assignment being recorded in the United States Patent and Trademark Office on February 14, 2006. *See id.* The next day, DaimlerChrysler Corporation and Orion signed the 2006 Settlement Agreement, ending the Texas Suits. *Id.* at 955.[12] Under that Agreement, Orion received $2.3 million. *Id.* The Warranty Provision at issue in this appeal, found in Article 8.1(a) of the 2006 Settlement Agreement, recites, in part:

> Orion represents and warrants as of the Effective Date that . . . (iii) it has not assigned or otherwise transferred to any other Person any rights to any causes of action, damages, or other remedies, or

---

[12]   Although the issue is not addressed in the briefing, Mercedes appears to receive the benefit of the 2006 Settlement Agreement based on its corporate relationship to DaimlerChrysler Corporation.

any Orion Patents, claims counterclaims or defenses, relating to the Litigation.

*See id.* at 955–56. "Effective Date" was defined in the 2006 Settlement Agreement as February 15, 2006. The definition of "Orion Patents" in the 2006 Settlement Agreement did not explicitly include the '658 patent. *Id.* at 956. On March 10, 2007, five days after Taurus was formed and ten days before it filed the DaimlerChrysler Patent Suit, Constellation IP assigned its rights in the '658 patent to Taurus. *See id.* As manager of Constellation IP, Spangenberg authorized the assignment to Taurus. *Id.* In the counterclaim relevant to this appeal, Chrysler and Mercedes asserted that Orion breached the Warranty Provision by transferring the '658 patent prior to it being asserted in the DaimlerChrysler Patent Suit.

### 2. PROCEEDINGS IN THE DISTRICT COURT

### a. PERSONAL JURISDICTION

In its *Jurisdiction Decision*, the district court addressed a motion to dismiss asserting that it did not have personal jurisdiction over Orion and Spangenberg—a Texas corporation and Texas resident, respectively. First, the district court determined that Orion, Taurus (a Wisconsin company), and other entities are merely alter egos of Spangenberg, and thus (under the alter ego doctrine) should be considered one and the same for jurisdictional purposes. *Jurisdictional Decision*, 519 F. Supp. 2d at 918–20. Based on this finding and Taurus's consent to personal jurisdiction by filing the DaimlerChrysler Patent Suit, the district court found personal jurisdiction over Orion and Spangenberg proper. *See id.* at 921.

Second, and in the alternative, the district court also found personal jurisdiction over Spangenberg proper under subsection 8 of Wisconsin's long-arm statute, based on his role as managing member of various Wisconsin corporations, including Taurus. *Id.* at 921–22; *see also*

Wis. Stat. Ann. § 801.05(8) (West 2008).[13]  Finding that Spangenberg established minimum contacts by forming Taurus as a Wisconsin corporation and by directing Taurus to file the DaimlerChrysler Patent Suit in Wisconsin, the district court determined that its assertion of personal jurisdiction over Spangenberg would not violate due process. *Jurisdictional Decision*, 519 F. Supp. 2d at 922–23.

### B. THE MERITS OF THE BREACH OF WARRANTY SUIT

In the same decision, the district court addressed the merits, denying a motion to dismiss the Breach of Warranty Counterclaim. *Jurisdiction Decision*, 519 F. Supp. 2d at 925–26.  First, the district court noted that the Warranty Provision clearly distinguished between "rights to any causes of action . . . relating to the [Texas] Litigation" and "Orion Patents, claims, counterclaims, or defenses." *Id.* at 926.  The district court interpreted "relating to the [Texas] Litigation" as "arising from the same set of facts." *Id.*  In that regard, it found that the accused technology in the Texas Suits was identical to that accused in the DaimlerChrysler Patent Suit, i.e., Chrysler's and Mercedes's websites. *Id.*  With that, the court concluded that the Breach of Warranty Counterclaim "stated a claim that Orion . . . assigned a right to a cause of action 'related' to the Texas [Suits] when it

---

[13] This subsection provides personal jurisdiction in the following circumstance: "**Director, officer or manager of a domestic corporation or limited liability company.** In any action against a defendant who is or was an officer, director or manager of a domestic corporation or domestic limited liability company where the action arises out of the defendant's conduct as such officer, director or manager or out of the activities of such corporation or limited liability company while the defendant held office as a director, officer or manager."

assigned the '658 patent because it could have brought a claim of infringement for the '658 patent under the same set of facts crucial to alleged infringement in the Texas [Suits]." *Id.*

Months later, in the *Summary Judgment Decision*, the district court again addressed the Breach of Warranty Counterclaim, denying a motion for summary judgment filed by Orion and Spangenberg. The district court found triable issues of fact as to whether Orion's transfer of the '658 patent constituted breach. *Summary Judgment Decision*, 534 F. Supp. 2d at 871, 873, 881 ¶ 10. In addition, it rejected, as inappropriate on summary judgment, the argument that Chrysler and Mercedes knew or should have known about the transfer of the '658 patent, thereby allegedly undermining the Breach of Warranty Counterclaim. *Id.* at 870.

The Breach of Warranty Counterclaim then proceeded to trial, where a jury found for Chrysler and Mercedes. *Post-Trial Decision*, 559 F. Supp. 2d at 957. After trial, the district court imposed damages against Orion in the amount of $3,839,416.37—comprising (1) $2,487,328.85 as damages for Orion's breach, based on the attorney fees incurred in defending against the DaimlerChrysler Patent Suit, and (2) $1,352,087.52 in attorney fees for prosecution of the Breach of Warranty Suit, based on § 38.001 of the Texas Civil Practice and Remedies Code, which, according to the district court, permits attorney fees in breach of contract actions involving Texas contracts.[14] *See Post-Trial Decision*, 559 F. Supp. 2d at 961–66, 976.

---

[14] Section 8.5 of the 2006 Settlement Agreement recites that the "[a]greement and matters connected with the performance thereof shall be construed, interpreted, applied and governed in all respects in accordance with the laws of the United States of America and the State of

As part of its analysis, the district court determined that Chrysler and Mercedes were not required to put on expert testimony regarding the reasonableness of the fees incurred in defending the DaimlerChrysler Patent Suit because the relevant Texas law was evidentiary, not substantive. *Id.* at 962–64. In addition, the district court took judicial notice of the reasonableness of the fees for prosecution of the Breach of Warranty Suit. *Id.* at 964–65. The district court also found that Orion and Spangenberg did not have a right to a jury trial on contract damages, and, if they did, that right had been waived. *Id.* at 962.

### C. MATTERS RELATED TO THE BREACH OF WARRANTY SUIT

#### (i) EXPERT TESTIMONY ON DAMAGES

Approximately a week before trial, Orion and Spangenberg moved to strike the damages claim in the Breach of Warranty Suit and dismiss that action, arguing that Chrysler and Mercedes had failed to identify an expert to testify on the reasonableness of the attorney fees incurred in defending against the DaimlerChrysler Patent Suit, which was required, according to Orion and Spangenberg, under Texas law. In opposition, Chrysler and Mercedes argued that the attorney fees for defending against the DaimlerChrysler Patent Suit could be properly established in a post-trial filing under Federal Rule of Civil Procedure 54. *See* Chrysler, LLC and Mercedes-Benz USA, Inc. Opposition to Defendants' Motion to Strike and Motion to Dismiss the Action, *Chrysler, LLC v. Orion IP, LLC*, No. 07-cv-0158 (W.D. Wisc. Mar. 5, 2008), ECF No. 445.

The district court did not rule on the motion to strike prior to trial. On the second day of trial, it did, however,

---

Texas, without reference to conflict of laws principles." *See* J.A. 9286.

echo the underlying concern that expert witnesses had not yet been identified but appeared necessary under Texas law. The next day, though, the district court reversed course, stating that Chrysler and Mercedes could present their attorney fees to the jury using a client representative and without the need for expert testimony on the reasonableness issue. Based on the alleged failure of Chrysler and Mercedes to produce certain materials related to fees, Orion and Spangenberg requested that the process of assessing the reasonableness of fees be addressed not at trial, but by filings after trial. Counsel for Chrysler and Mercedes agreed, stating that "we can . . . handle this on papers." With that agreement in place, Chrysler and Mercedes did not put on evidence on damages for the Breach of Warranty Counterclaim.

A few weeks after trial, Chrysler and Mercedes filed various declarations, legal bills, and other documents seeking to demonstrate the reasonableness of their claimed attorney fees. Included was the declaration of a partner at a law firm in Tyler, Texas. In his declaration, the attorney reviewed his "expert assignment" and provided his "expert opinion as to the reasonableness of attorneys' and experts' fees and costs, as claimed in Chrysler's and MBUSA's Petition for Fees and Expenses for their successful contract breach claims and under 35 U.S.C. § 285." In the brief filed in support of their claim for attorney fees, Chrysler and Mercedes stated that their opposition to Orion and Spangenberg's motion to strike had "confirmed that the appropriate procedure for resolving the amount of damages in this federal case is a motion under Rule 54 of the Federal Rules of Civil Procedure." J.A. 8084 (citing *Rissman v. Rissman*, 229 F.3d 586, 588 (7th Cir. 2000); *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313–15 (2d Cir. 1993); *Resolution Trust Corp. v. Marshall*, 939 F.2d 274, 279 (5th Cir. 1991)).

### (ii) THE IMPOSITION OF EVIDENTIARY SANCTIONS FOR WITNESS TAMPERING

On March 11, 2008, three days before trial, the court held a hearing and determined that Spangenberg and an attorney named Patrick Anderson, who was working for one of Spangenberg's companies, had recently engaged in witness tampering. *Post-Trial Decision*, 559 F. Supp. 2d at 957. At the March 11 hearing, the district court made various factual findings, which are set forth in the *Post-Trial Decision*, 559 F. Supp. 2d at 971–73, and, for sufficient background, are summarized here.

Before graduating from law school in 2005, Patrick Anderson was employed by a law firm in Detroit, which placed him in a temporary position with Chrysler as a patent agent working on patent prosecution. *Id.* at 971. Anderson left his contract position at Chrysler and returned to his firm in May of 2006, with the understanding that everything he learned during his time at Chrysler was confidential. *Id.* In the fall of 2006, Anderson sent his resume, which included his experience with Chrysler, to an attorney working at Intellectual Property Navigation, another of Spangenberg's business entities. *Id.* Anderson interviewed for an attorney position but did not receive a job offer at that time. *Id.* In the fall of 2007, after the district court denied the motion to dismiss for lack of personal jurisdiction filed by Orion and Spangenberg, Anderson received a call from Spangenberg with a job offer. *Id.*

On March 6, 2008, the district court directed Orion and Spangenberg to make a written offer of proof as to what, if anything, Chrysler and Mercedes knew about the '658 patent before the 2006 Settlement Agreement was signed.[15] *Id.* That same evening, Spangenberg called

---

[15] In the district court, Orion and Spangenberg argued that, under Texas law, a party alleging breach of an

Anderson and told him that Sean Butler, one of Chrysler's potential witnesses, was going to commit perjury in his testimony relating to the reliance issue. *Id.* at 972. Spangenberg reminded Anderson that Butler and Anderson had worked together at Chrysler. *Id.* In addition, Spangenberg suggested that it may "cause some kind of problems" for Anderson to not take steps to "deal with" the potential perjury. *Id.*

By the following day, to familiarize himself with the relevant facts, Anderson had read the 73-page *Summary Judgment Decision*, researched the local ethics rules, contacted a state bar hotline and an ethics attorney, and drafted a letter to Butler. *Id.* Then, Anderson called Butler and asked whether he would be testifying for Chrysler. *Id.* Butler told Anderson that decision was not his to make. *Id.* Anderson then sent Butler the previously drafted letter, in which Anderson stated that, based on his review of the *Summary Judgment Decision*, it appeared that Chrysler is representing "that it was not aware that the '658 patent was transferred away from Orion IP prior to the settlement." *Id.* In the letter, Anderson "reminded" Butler of "certain facts," including Anderson's obligation under the Michigan ethics rules to persuade a former client to testify truthfully, to take remedial measures if the client refuses, and to report conduct that "raises a substantial question to a lawyer's fitness to practice law." *Id.* Anderson continued: "Please contact me and assure me that you will testify truthfully on all matters asked during your testimony, no later than 9AM, Monday March 10, 2008." *Id.* Anderson did not reveal his employer to Butler. *Id.* at 972–73.

---

express warranty must show reliance on the warranty provision, which Chrysler and Mercedes arguably could not have shown if they knew that Orion had previously transferred the '658 patent.

The district court found that Anderson had drafted the letter and made the call to Butler on Spangenberg's office equipment, but that Anderson had not consulted with Spangenberg or anyone else prior to contacting Butler. *See id.* at 973. Anderson also drafted a declaration for the court, stating that he believed that Chrysler and Mercedes were untruthful in their interrogatory response answering that their only analyses of the '658 patent were conducted *after* the filing of the DaimlerChrysler Patent Suit. *Id.* The declaration was filed in support of Orion and Spangenberg's offer of proof at approximately 1:30 a.m. on March 10, 2008, several hours before the deadline Anderson had set in the letter to Butler. *Id.* Later that same day, Chrysler and Mercedes filed a motion seeking to exclude Anderson's testimony from trial and requesting a hearing regarding Anderson's recent conduct. The district court granted the request, and held the hearing on March 11, 2008.

In an open portion of the March 11 hearing, the court made the findings discussed above. Later, in a closed portion of the hearing (attended only by counsel for Chrysler and Mercedes to protect allegedly confidential information), the district court found that, insofar as it spoke to Chrysler's prior knowledge of the '658 patent, Anderson's declaration was based on a search relating to the '658 patent carried out more than two years before Anderson contacted Butler. *See id.* The district court found that, while Anderson was working at Chrysler, he "was asked to run a search for a particular outcome, and for a particular reason." *Id.*[16] The district court found that Anderson did not document that search, and that his work computer did not contain evidence of such a search.

---

[16] Although the district court did not release an unredacted transcript from the closed hearing, the *Post-Trial Decision* did contain certain information regarding Anderson's testimony.

*Id.* With these findings, the district court seemed to draw into question the sufficiency of Anderson's basis for contacting Butler.

Based on these factual findings, the district court found clear and convincing evidence of sanctionable behavior for two reasons *See id.* at 974. First, the district court concluded that "Anderson's communication with Butler was designed to intimidate Butler and influence his testimony." *Id.* Second, the court found that "Spangenberg's relationship with Anderson and his involvement in Anderson's witness tampering show that Spangenberg intended Anderson to improperly influence Butler's testimony and that he put Anderson up to unethical behavior for Spangenberg's (and Orion's) benefit." *Id.* The district court found two "problems" with Spangenberg's call to Anderson: (1) Anderson should have been behind a "Chinese Wall," based on his prior employment with Chrysler, and (2) Spangenberg's suggestion that Anderson call Butler was "manipulative and improper" because of Anderson's employment with Spangenberg. *Id.*

Finding Spangenberg's conduct sanctionable, the district court precluded Orion and Spangenberg from evoking testimony regarding Chrysler's or Mercedes's alleged knowledge of the transfer of the '658 patent. *Id.* at 975. With that, the district court essentially prevented Orion or Spangenberg from asserting that Chrysler and Mercedes did not rely on the Warranty Provision. *See id.* According to Orion and Spangenberg, if Chrysler and Mercedes did not rely on the warranty provision, Orion could not be found liable for breach of the Settlement Agreement.

In the *Post-Trial Decision*, the district court denied a motion for reconsideration of the finding of witness tampering and the sanction imposed. *Post-Trial Decision*, 559 F. Supp. 2d at 970–75. Soon after the *Post-Trial Decision*, the district court issued a brief order denying judgment as

a matter of law as to liability and damages for the Breach of Warranty Counterclaim, as well as on the sanctions issue. Orion and Spangenberg now appeal (1) the finding of personal jurisdiction over them, (2) the finding of liability on the Breach of Warranty Counterclaim, (3) the award of damages and attorney fees based on the Breach of Warranty Counterclaim, and (4) the finding of witness tampering and the evidentiary sanction imposed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## B. DISCUSSION

### 1. PERSONAL JURISDICTION

We first address whether the district court properly exercised personal jurisdiction over Orion (a Texas limited liability corporation) and Spangenberg (a Texas resident). Orion and Spangenberg argue that the alter ego doctrine, under either Texas or Wisconsin law, did not provide a proper basis for the exercise of personal jurisdiction by the district court. First, they address the general requirement of control under both states' law. According to Orion and Spangenberg, the district court failed to show how any control exercised by Spangenberg over Taurus related to an alleged unjust act by Taurus because Taurus was not formed at the time of the 2006 Settlement Agreement. Similarly, Orion and Spangenberg assert that the unity of two entities—i.e., Spangenberg and Taurus or Spangenberg and Orion—required to pierce the corporate veil under Texas law was not present.

Next, they assert that the facts do not show the fraud, injustice, or dishonest act generally required under Texas and Wisconsin law. Specifically, Orion and Spangenberg assert that the district court erroneously found "suspicious" cash flow and improperly faulted Taurus's low capitalization, *see Jurisdictional Decision*, 519 F. Supp. 2d at 920, even though no laws mandate a required amount of capitalization. According to Orion and Spangenberg, the requirement of fraud or injustice cannot be met by the

normal acts of a single manager acting separately with respect to each business unit.

As to the required control under the alter ego doctrine, Chrysler and Mercedes argue that Spangenberg did not need to use Taurus as his "personal cash box," but, under both Wisconsin and Texas law, only needed to have asserted dominion over its internal policy and daily business operations. Chrysler and Mercedes assert that, for jurisdictional veil-piercing, the "injustice" required is less than for substantive veil-piercing and that, here, the injustice is found in "the attempt to use the corporate façade to avoid the reach of the [2006] Settlement Agreement by transferring the ['658] patent between allegedly separate and distinct companies."

Regarding the district court's application of the Wisconsin long-arm statute, Orion and Spangenberg assert that, under the relevant subsection, the action must arise out of conduct as a manager of a Wisconsin company. They argue that the Breach of Warranty Counterclaim cannot arise out of Spangenberg's conduct as manager of Taurus because Taurus was not formed until 2007, after the 2006 Settlement Agreement was signed. Chrysler and Mercedes respond that the district court properly found personal jurisdiction over Spangenberg under subsection 8 of the Wisconsin long-arm statute, and also argue that Orion is subject to jurisdiction under subsection (5)(a) of that statute[17] because the Breach of Warranty Suit arose from the "promise" Orion made in the Warranty Provision.

---

[17] This subsection provides personal jurisdiction over an entity in an action that "[a]rises out of a promise, made anywhere . . . by the defendant to perform services within this state . . . ." Wis. Stat. Ann. 801.05(5)(a) (West 2008).

Chrysler and Mercedes also maintain that Orion and Spangenberg waived any arguments against personal jurisdiction by "actively participating in the Wisconsin Litigation" and by not addressing jurisdiction at trial. Orion and Spangenberg respond that Chrysler and Mercedes have never argued waiver before this appeal and that Orion and Spangenberg have continuously asserted lack of jurisdiction throughout the Breach of Warranty Suit.

This court reviews the issue of personal jurisdiction with respect to non-patent claims under the law of the regional circuit. *See Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). The Seventh Circuit reviews *de novo* the denial of a motion to dismiss for lack of personal jurisdiction. *See Illinois v. Hemi Gp. LLC*, 622 F.3d 754, 756 (7th Cir. 2010). In such situations, any factual inferences must be drawn in favor of the non-movant. *See Textor v. Bd. of Regents of N. Illinois Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1983).

"A federal district court in a diversity case has personal jurisdiction over a non-consenting, nonresident defendant if and only if a court of the state in which the district court sits would have jurisdiction (in our case Wisconsin)." *See Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 664–65 (7th Cir. 1986). The Wisconsin Supreme Court has recognized the alter ego doctrine as an exception to the presumed "nonliability" of a shareholder, director, or officer of a corporate entity. Under that doctrine, a state court can, in certain circumstances, assert personal jurisdiction over such a person. *Consumer's Co-op of Walworth Cnty. v. Olsen*, 419 N.W.2d 211, 217–18 (Wis. 1988). To assess whether the district court properly pierced Taurus to reach Spangenberg, as alter egos of each other, we will (as would a Wisconsin state court) apply the law of Wisconsin, the state of Taurus's incorporation. *See Restatement (Second) of Conflict of Laws* § 309 (1971) ("The local law of the state of incorpo-

ration will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders . . . .").

"Although the alter ego doctrine is typically employed to pierce the corporate veil of a controlled entity to reach the assets of the controlling party . . . the doctrine can also be applied in reverse to reach the assets of a controlled entity. It is particularly appropriate to apply the alter ego doctrine in 'reverse' when the controlling party uses the controlled entity to hide assets or secretly to conduct business to avoid the pre-existing liability of the controlling party." *Olen v. Phelps*, 546 N.W.2d 176, 181 (Wis. Ct. App. 1996) (quoting *Select Creations, Inc. v. Paliafito Am., Inc.*, 852 F. Supp. 740, 774 (E.D. Wis. 1994)); *Cappuccitti v. Gulf Indus. Prods., Inc.*, 222 S.W.3d 468, 481 (Tex. App. 2007) (recognizing reverse veil-piercing under Texas law in a jurisdictional context); *see also Zahra Spiritual Trust v. United States*, 910 F.2d 240, 243–44 (5th Cir. 1990) (in a liability context, recognizing that Texas courts can reverse pierce based on a finding of alter egos); *see generally* 1 William W. Fletcher, Cyclopedia of the Law of Corporations § 41.70 ("In a case of 'reverse piercing of the corporate veil,' the plaintiff seeks to hold the corporation liable for the actions of its shareholder."). To assess whether the district court properly performed a reverse veil-piercing to reach Orion (a Texas corporation) via Spangenberg (a Texas resident), we will (as would a Wisconsin state court) apply the law of Texas. *See Restatement (Second) of Conflict of Laws* § 302 (1971); *see also Select Creations*, 852 F. Supp. at 774 ("A court applies the law of the state of incorporation of the controlled corporation to determine whether the corporate form should be disregarded.").

We first turn to the district court's piercing of the corporate veil to assert personal jurisdiction over Spangenberg as an alter ego of Taurus. Under Wisconsin law, the alter ego doctrine requires proof of:

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own;

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Consumer's Co-op*, 419 N.W.2d at 217–18. Orion and Spangenberg assert error with the district court's findings as to the first two elements, which we will refer to as the Control element and the Unjust Act element, respectively.

As to the Control element, we must first clarify the identity of the "transaction attacked." Contrary to the position taken by Orion and Spangenberg, the relevant transaction is not the signing of the 2006 Settlement Agreement or prior negotiations. These are not relevant for precisely the reason raised by Orion and Spangenberg—Taurus was not yet in existence. Instead, the relevant transactions are Taurus's formation in Wisconsin and its filing of the DaimlerChrysler Patent Suit because those were, given the totality of the circumstances, the allegedly unjust acts during which Spangenberg dominated and controlled Taurus. *See Consumer's Co-op*, 419 N.W.2d at 217–18. As found by the district court, Spangenberg is the owner and managing member of Taurus, and authorized (1) its formation in Wisconsin, (2) the assignment of the '658 patent to it, (3) its initial capitalization, and (4) the filing by it of the DaimlerChrysler

Patent Suit.  *See Jurisdiction Decision*, 519 F. Supp. 2d at 917.  In addition, Spangenberg manages Taurus on behalf of its parent entity, which is owned by Spangenberg's wife and son.  *See id.*  Moreover, as found by the district court, "[i]t is highly unlikely that [Taurus] could have engaged in an independent decision to file" the DaimlerChrysler Patent Suit without Spangenberg.  *See Jurisdiction Decision*, 519 F. Supp. 2d at 920.

Based on the record before us, we conclude that Spangenberg had "complete domination" over all aspects of the relevant transactions, so that Taurus had "no separate mind, will or existence of its own."  *See Consumer's Co-op*, 419 N.W.2d at 217–18.  Indeed, we can discern no aspect of Taurus's business affairs not controlled in their entirety by Spangenberg.  Although, as argued by Orion and Spangenberg, this level of control by a single manager is not improper in its own right, it is sufficient to satisfy this element of the analysis.  *See id.* at 218 ("[I]t is apparent that just as control, absent a showing of injustice, would not justify exception to the general rule of corporate nonliability, injustice, absent the establishment of control, would not constitute adequate grounds to pierce the corporate veil.").

As to the Unjust Act element, we agree with Chrysler and Mercedes, who have framed the relevant contravention of their rights as Spangenberg's "attempt to use the corporate façade to avoid the reach of the [2006] Settlement Agreement by transferring the ['658] patent between allegedly separate and distinct companies" and, we would add, controlling Taurus to file suit asserting that patent.  In other words, through the acts discussed above, Spangenberg sought to use Taurus to assert a patent that Orion, under the 2006 Settlement Agreement, was arguably prohibited from asserting against Chrysler and Mercedes.  With these acts, Spangenberg hoped to nullify the Warranty Provision "in contravention of [Chrysler's and Mercedes's] legal rights."  *See Consumer's Co-op*, 419

N.W.2d at 218. For these reasons, the district court properly found personal jurisdiction over Spangenberg as an alter ego of Taurus.

With personal jurisdiction over Spangenberg established, we turn to the other half of our jurisdictional analysis and assess whether the district court properly applied Texas law to reverse pierce from Spangenberg to Orion. We conclude that it did. Texas law permits finding jurisdiction under the alter ego doctrine "when there is [1] such unity between a corporation and an individual that the separateness of the corporation has ceased and [2] asserting jurisdiction over only the corporation would result in an injustice." *Cappuccitti*, 222 S.W.3d at 481; *see also Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990) (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986)).[18] This same standard also applies to reverse-piercing situations to assess whether asserting jurisdiction over only the individual (as opposed to the corporation) would result in injustice. *See Cappuccitti*, 222 S.W.3d at 481. Because of the similarities between Wisconsin and Texas law, we will also refer to the elements set forth in *Cappuccitti* as the Control element and the Unjust Act element, respectively. *See Bolloré S.A. v. Import Warehouse, Inc.,* 448 F.3d 317, 325 (5th Cir. 2006)

---

[18] The parties have stated, we think correctly, that the tests under Texas and Wisconsin law are all but identical. Indeed, in its seminal decision on this issue, the Wisconsin Supreme Court set forth an alternative two-prong test that it acknowledged was "essentially identical" to its three-prong test. *See Consumer's Co-op*, 419 N.W.2d at 218 n.5. We note that this alternative test is, in turn, essentially identical to the standard under Texas law. *Cf. id. with Mancorp*, 802 S.W.2d at 228.

(quoting *Castleberry,* 721 S.W.2d at 272)[19] (including as one factor relevant in the alter ego analysis, "the amount of financial interest, *ownership and control the individual maintains over the corporation*") (emphasis added).

As to the Control element, Spangenberg exerted control over Orion similar to that he exercised over Taurus. Specifically, as the manager of Orion, Spangenberg coordinated the transfer of the '658 patent from a predecessor of Orion to Taurus, via two other controlled entities. *Jurisdiction Decision*, 519 F. Supp. 2d at 913–17. In addition, Spangenberg authorized the predecessor of Orion to enter into the 2006 Settlement Agreement and authorized that entity's subsequent merger to create Orion. *Id.* at 915–17. Moreover, Spangenberg and Orion entered into a license agreement for the '658 patent with Harley Davidson in 2006, even though Orion's predecessor had already transferred its ownership in that patent prior to the negotiations. *Id.* at 917; *see also Dainippon Screen Manuf. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1270 (Fed. Cir. 1998) (finding jurisdiction over an out-of-state patent holding company under a long-arm statute, in part, because counsel for the in-state parent made statements improperly indicating ownership of the patents by the parent during negotiations). Further, Spangenberg manages Orion, like Taurus, on behalf of a parent entity owned by Spangenberg's wife and son. *Jurisdiction Decision*, 519 F. Supp. 2d at 917. Based on the record before us, we conclude that Spangenberg and Orion were united as one with respect to all matters relevant here.

---

[19] As noted in various Texas decisions, *Castleberry* was superseded by statute only to the extent that failure to observe corporate formalities is no longer a factor in proving alter ego. *See, e.g., Aluminum Chems. (Bolivia), Inc. v. Bechtel Corp.*, 28 S.W.3d 64, 67 n.3 (Tex. App. 2000).

We now turn to the Unjust Act element. Under Texas law, the "injustice" relevant to that element is the possibility of a party being unable to collect on a valid judgment. *Mancorp, Inc. v. Culpepper*, 836 S.W.2d 844, 846 (Tex. App. 1992). That is the situation here. Without jurisdiction over Orion—successor to the signatory of the 2006 Settlement Agreement—the district court could not provide the remedy sought by Chrysler and Mercedes, namely monetary damages for the Breach of Warranty Counterclaim. Indeed, that counterclaim is, in effect, a license-related defense to the infringement alleged in the DaimlerChrysler Patent Suit. *See Dainippon Screen*, 142 F.3d at 1271 (rejecting the contention, in a long-arm statute jurisdictional analysis, that "a parent company can incorporate a holding company in another state, transfer its patents to the holding company, . . . and threaten its competitors with infringement" without fear of personal jurisdiction). Thus, this element has been satisfied as well. For these reasons, we affirm the district court's finding of personal jurisdiction over both Spangenberg and Orion under the alter ego doctrine.

Having found the exercise of jurisdiction proper under the alter ego doctrine, we need not address the alternative basis for finding jurisdiction over Spangenberg, the Wisconsin long-arm statute, *see Jurisdiction Decision*, 519 F. Supp. 2d at 921–23, and we need not address Chrysler's and Mercedes's arguments based on waiver and other subsections of the long-arm statute.

### 2. BREACH OF WARRANTY

We now address the jury verdict finding breach of the Warranty Provision. Orion and Spangenberg argue that the district court should have granted judgment as a matter of law overturning the verdict because the court improperly broadened the scope of the Warranty Provision to include the '658 patent. In their view, the court should have taken into account that (1) the '658 patent

was transferred eighteen months before settlement of the Texas Suits, (2) Orion disclosed the transfer of the '658 patent in discovery in the Texas Suits, and (3) Chrysler and Mercedes allegedly knew the transfer had occurred. According to Orion and Spangenberg, the court's ruling leads to the absurd result that they made, and DaimlerChrysler Corporation accepted, a warranty all knew was breached at the time the 2006 Settlement Agreement was signed. Orion and Spangenberg also assert that the district court erred by not granting summary judgment in their favor because a breach of express warranty claim in Texas requires showing reliance on the warranty, which could not have been shown based on Chrysler's and Mercedes's alleged knowledge of the transfer of the '658 patent.

Chrysler and Mercedes respond that the district court did not hold that the Warranty Provision included the '658 patent, but that, rather, it determined that the phrase "relating to the Texas Litigation," found in that provision, included "any cause of action arising from the same set of facts." According to Chrysler and Mercedes, the evidence shows that Orion had more knowledge of the transferred patents, including the '658 patent, than they had. Chrysler and Mercedes also argue that the jury heard and rejected Orion's and Spangenberg's current arguments. As to summary judgment, Chrysler and Mercedes assert that, under Texas law, any reliance requirement is satisfied when the warranty is incorporated into a final written contract.

We review denial of judgment as a matter of law under the law of the regional circuit. *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1367–68 (Fed. Cir. 2005). The Seventh Circuit reviews *de novo* a denial of judgment as a matter of law. *Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1265 (Fed. Cir. 2012) (citing *Waters v. City of Chicago,* 580 F.3d 575, 580 (7th Cir. 2009)). "Reversal is warranted only if no reasonable juror could have found for

the nonmoving party." *Waters,* 580 F.3d at 580. We review a denial of summary judgment under the law of the regional circuit. *Lexicon Med., LLC v. Northgate Techs., Inc.*, 641 F.3d 1352, 1358 (Fed. Cir. 2011). The Seventh Circuit also reviews a denial of summary judgment *de novo. Belcher v.* Norton, 497 F.3d 742, 747 (7th Cir. 2007). "A denial of a motion for summary judgment may be appealed, even after a final judgment at trial, if the motion involved a purely legal question and the factual disputes resolved at trial do not affect the resolution of that legal question." *United Techs. Corp. v. Chromalloy Gas Turbine Corp.*, 189 F.3d 1338, 1344 (Fed. Cir. 1999) (citing *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1318 (7th Cir. 1995)).

We conclude that the district court properly denied judgment as a matter of law on the Breach of Warranty Counterclaim because a reasonable juror could have found for Chrysler and Mercedes. We see no error in the district court's conclusion that "relating to the [Texas] Litigation[s]" includes causes of action involving the same set of facts—here, the same or similar accused websites. Notably, the day before the jury verdict on this issue, Orion and Spangenberg proposed post-trial jury instructions linking issues "relating to the [Texas] Litigation[s]" with issues involving "the same set of crucial facts." J.A. 6018 ("When determining whether Orion's transfer of the '658 patent was 'related to the Litigation,' you should consider whether the Wisconsin lawsuit (in which Taurus asserted the '658 patent) involved the same set of crucial facts that were at issue in the Texas lawsuit (in which Orion asserted the '342 and '627 patents)."). Further, contrary to Orion's and Spangenberg's argument, this conclusion does not lead to an absurd result because the record does not establish that Chrysler or Mercedes had assessed the scope of the '658 patent and had concluded that it could be asserted against the same websites accused in the Texas Suits. The fact that those entities potentially knew or

should have known about the transfer of the '658 patent does not necessarily mean that they understood the scope of that patent, thereby implicating the Warranty Provision. For similar reasons, we see no error in the court's denial of summary judgment.

### 3. DAMAGES

We now turn to the attorney fees and damages imposed on Orion: (1) $1,352,087.52 in attorney fees for prosecution of the Breach of Warranty Suit based on § 38.001 of the Texas Civil Practice and Remedies Code,[20] and (2) $2,487,328.85 for attorney fees incurred by Chrysler and Mercedes in defending against the DaimlerChrysler Patent Suit. *Post-Trial Decision*, 559 F. Supp. 2d at 961–66, 976. The first is an award of traditional post-trial attorney fees based on prevailing in the Breach of Warranty Suit. The second award, however, was based on the jury's finding that "Orion's transfer of the '658 patent breached a warranty it had made with defendants in an earlier settlement agreement and that the fees and expenses defendants expended in defense of Taurus's lawsuit resulted from that breach." *Post-Trial Decision*, 559 F. Supp. 2d at 967. In other words, the jury found that Orion's breach of the Warranty Provision caused Chrysler and Mercedes to incur the attorney fees in the DaimlerChrysler Patent Suit. Thus, although quantified in terms of attorney fees, the second award is properly viewed as damages for the Breach of Warranty Counterclaim, not as post-trial attorney fees. *Post-Trial Decision*, 559 F. Supp. 2d at 962 (drawing a distinction between "'traditional' attorney fees available to prevailing parties

---

[20] This section states: "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: . . . (8) an oral or written contract."

in Texas breach of contract suits" and "attorney fees available as damages").

Orion and Spangenberg assert that the district court erred in taking judicial notice of the amount of attorney fees sought for prosecution of the Breach of Warranty Suit rather than requiring expert testimony. In addition, they argue that the district court erred by not applying Texas law, which requires expert testimony to determine the reasonableness of the attorney fees in defending the DaimlerChrysler Patent Suit, because the requirement for expert testimony is "substantive," not merely "evidentiary," as found by the district court. According to Orion and Spangenberg, Chrysler and Mercedes failed to put on sufficient evidence (including expert testimony) at trial to support damages, and cannot rely on post-trial submissions.

Chrysler and Mercedes respond that the district court correctly determined that the Texas law regarding experts was not binding because it was an evidentiary rule not reflective of any substantive policy. In addition, they argue that the bar for expert testimony was low, as counsel for a party can provide expert testimony supporting the reasonableness of attorney fees.

Finally, Orion and Spangenberg argue that the Seventh Amendment guarantees a right to a jury trial on damages in a breach of contract action. They also assert that the cases relied on by the district court to avoid that jury right do not apply here. According to Orion and Spangenberg, the record makes clear that they did not ask for a "paper trial" on damages, and instead consistently requested a jury and demanded expert testimony. In addition, they assert that they did not waive their right to a jury trial and, thus, the district court erred in taking judicial notice of the reasonableness of damages.

Chrysler and Mercedes respond that no jury right exists to an assessment of reasonable attorney fees. If such

a right does exist, Chrysler and Mercedes assert that Orion and Spangenberg waived their right.

The Seventh Circuit reviews a district court's findings regarding the sufficiency of proof for damages for clear error. *See Durasys, Inc. v. Leyba*, 992 F.2d 1465, 1470 (7th Cir. 1993).

a. ATTORNEY FEES INCURRED IN PROSECUTING THE BREACH OF WARRANTY SUIT

As to the approximately $1.35 million awarded under § 38.001 of the Texas Civil Procedures and Remedies Code for fees incurred by Chrysler and Mercedes in prosecuting the Breach of Warranty Suit, we conclude that (1) Orion and Spangenberg did not have a right to a jury trial on that issue, and (2) expert testimony was not required. Although Orion and Spangenberg are correct that a party has a Seventh Amendment right to a jury trial on *damages* in a breach of contract case, a party is not entitled to a jury trial on *attorney fees* assessed after trial. *Compare Ross v. Bernhard*, 396 U.S. 531, 542 (1970) (stockholders entitled to a jury trial where the complaint included allegations of breach of contract and sought damages) *with Resolution Trust*, 939 F.2d at 279 ("Since there is no common law right to recover attorneys fees, the Seventh Amendment does not guarantee a trial by jury to determine the amount of reasonable attorneys fees."); *see also McGuire*, 1 F.3d at 1313–15 (finding that a jury right exists to assess whether attorney fees should be paid but that a jury right does not exist to determine the amount of the fee award). The amount now at issue was awarded not as damages for breach, but as, in the words of the district court, "'traditional' attorneys fees." *Post-Trial Decision*, 559 F. Supp. 2d at 962 ("Aside from the attorney fees available as damages, defendants seek the 'traditional' attorney fees available to prevailing parties in Texas breach of contract suits."). Thus, Orion and Spangenberg

did not have a Seventh Amendment right to a jury on that award.

Further, Orion and Spangenberg are incorrect that "[e]xpert testimony also is required to support a district court's finding that attorneys' fees are reasonable under section 38.001." *See* Orion Opening Br. 46. First, neither of the decisions relied on even mentions that section of the Texas Civil Practice and Remedies Code. *See Gulf Paving Co. v. Lofstedt*, 188 S.W.2d 155, 161 (Tex. 1945); *Twin City Fire Ins. Co. v. Vega-Garcia*, 223 S.W.3d 762, 770 (Tex. App. 2007). Second, in a decision directly addressing this issue, the United States Court of Appeals for the Fifth Circuit explicitly rejected the argument that expert testimony is required to recover attorney fees under § 38.001 for a breach of contract action. *See Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 493 (5th Cir. 2004). For these reasons, we conclude that the district court did not err in awarding attorney fees against Orion in the amount of $1,352,087.52.

### b. DAMAGES INCURRED IN DEFENDING THE DAIMLERCHRYSLER PATENT SUIT

We turn now to the damages of approximately $2.487 million awarded to Chrysler and Mercedes for fees incurred in defending against the DaimlerChrysler Patent Suit. Based on the nature of this second award—breach of contract damages quantified in the form of attorney fees—we need not address the two primary issues disputed by the parties: whether the Texas rule requiring expert testimony should apply and whether Orion and Spangenberg had a right to a jury trial on this award. Instead, we can dispose of this issue by assessing whether Chrysler and Mercedes satisfied their burden to prove all elements of the Breach of Warranty Counterclaim. We find that, by not putting on any evidence at trial to prove damages sustained based on the breach, Chrysler and Mercedes failed to prove damages, a required element of a breach of

contract claim under Texas law. *See Domingo v. Mitchell,* 257 S.W.3d 34, 39 (Tex. App. 2008).

As noted, a jury heard the issue of liability on the Breach of Warranty Counterclaim. The jury did not, however, hear evidence regarding the damages allegedly flowing from that breach—i.e., the attorney fees in defending against the DaimlerChrysler Patent Suit— because Chrysler and Mercedes decided to only submit that evidence in post-trial filings to the court. For the reasons set forth below, the evidence submitted to the district court cannot support the damages sought by—and awarded to—Chrysler and Mercedes.

The post-trial filings under Rule 54, relied on by Chrysler and Mercedes, cannot support this award because that rule does not apply when "the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A); *see also* Fed. R. Civ. P. 54(d)(2) advisory committee's notes to the 1993 Amendments (noting that subparagraph (A) "does not . . . apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury"); *J.R. Simplot v. Chevron Pipeline Co.,* 563 F.3d 1102, 1115–16 (10th Cir. 2009) (noting the distinction in Rule 54(d)(2)(A) and the committee's notes in a case where the claimant "seeks the [attorney] fees as the measure of *damages* resulting from . . . breach, 'as an element of damages under a contract'"). That is precisely the situation here. This award was attorney fees given as an element of damages based on Orion's breach of the Warranty Provision; it was not an award for traditional attorney fees. Because their submissions under Rule 54 were inadequate to prove this award, Chrysler and Mercedes have no evidence from trial to support the damages element of their Breach of Warranty Counterclaim.

We are not persuaded by the decisions previously cited by Chrysler and Mercedes to support their reliance on a post-trial filing under Rule 54. Specifically, each of those decisions involved post-trial recovery of traditional attorney fees, not attorney fees used as a measure of damages for, for example, a breach of contract. *See Rissman*, 229 F.3d at 588; *McGuire*, 1 F.3d at 1316; *Resolution Trust*, 939 F.2d at 278–80. Further, in their opposition to the motion to strike, Chrysler and Mercedes included a summary chart, shown below, in which they conceded that only a jury, not a post-trial filing under Rule 54, can support the damages currently at issue. Specifically, as set forth in the boxes added by this court, the chart shows that for "[Attorney] Fees for defending Taurus's Patent Claims" sought as "Damages awarded for a breach of contract under Texas law," the issue is properly resolved by a "Jury," not by a "Court, under Rule 54."

| Components of Fees | Authority for Award | DecisionMaker/Process for Resolution |
|---|---|---|
| Fees for defending Taurus's Patent Claims | 1. Damages awarded for breach of contract under Texas law;<br>2. Texas Civ. Pract. Act, § 38.001(8); and<br>3. 35 U.S.C. § 285. | 1. Jury;<br>2. Court, under Rule 54;<br>3. Court, under Rule 54. |
| Fees for prosecuting breach of contract claims | 1. Texas Civ. Pract. § 38.001(8). | 1. Court, under Rule 54. |

*See* Chrysler, LLC and Mercedes-Benz USA, Inc. Opposition to Defendants' Motion to Strike and Motion to Dismiss the Action, *supra*, at 3 (boxes added); *see also Richardson v. Wells Fargo Bank*, No. 4:11-cv-359, 2012 WL 6028912, at *4 (N.D. Tex. Dec. 3, 2012) (finding a filing under Rule 54 inappropriate when "[t]he litigation expenses defendants are seeking to recover quite clearly are contractual damages to be proved at trial").

Although it appears that Orion and Spangenberg did indeed initiate the entry of evidence "on paper" rather than at trial, Chrysler and Mercedes—who retained the burden of proof on damages—agreed to this improper

procedure. Because Chrysler and Mercedes did not set forth sufficient evidence at trial to support this second award of damages for its Breach of Warranty Counterclaim, we reverse the district court's denial of the motion for judgment as a matter of law filed by Orion and Spangenberg.

We thus reverse the judgment as a matter of law regarding the award of $2,487,328.85 in damages for the Breach of Warranty Counterclaim, *see Post-Trial Decision*, 559 F. Supp. 2d at 966, but affirm the award of $1,352,087.52 in attorney fees for prosecution of the Breach of Warranty Suit.[21]

### 4. SANCTIONS

The final issue in this appeal is the evidentiary sanctions imposed based on the finding that Spangenberg

---

[21] This ruling does not affect the award of $1,644,906.12 under 35 U.S.C. § 285 based on attorney fees incurred in defending against the DaimlerChrysler Patent Suit. *See Post-Trial Decision*, 559 F. Supp. 2d at 976, ¶ 8. As set forth in the *Post-Trial Decision*, that amount was awarded against Taurus and Orion, jointly and severally. *See id.*, ¶ 11. After this appeal, the following judgments remain from the *Post-Trial Decision*: (1) $1,644,906.12 under 35 U.S.C. § 285 payable to Chrysler and Mercedes by Taurus and Orion, jointly and severally, and (2) $1,352,087.52 under § 38.001 of the Texas Civil Practice and Remedies Code payable to Chrysler and Mercedes by Orion. *See id.* at 976; *see also* Oral Argument at 32:15–34:00, *Taurus IP, LLC v. DaimlerChrysler Corp.*, Nos. 2008-1462, -1463, -1464, -1465 (Fed. Cir. Feb. 7, 2013), *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 08-1462.mp3 (counsel for Chrysler and Mercedes discussing apportionment of the damages awards between Orion and Taurus to avoid "double-counting").

engaged in sanctionable witness tampering on the eve of trial. Orion and Spangenberg argue that they did not receive sufficient notice of the specific conduct for which sanctions would be imposed before the imposition of those sanctions. According to Orion and Spangenberg, the district court erred by (1) only hearing from Anderson prior to imposing sanctions, (2) not letting Spangenberg or Orion testify or present evidence in their defense, and (3) not allowing Spangenberg to see the testimony used against him. Orion and Spangenberg also assert that the district court abused its discretion in imposing sanctions because it lacked clear and convincing evidence of sanctionable conduct. According to Orion and Spangenberg, the conduct for which they were sanctioned was required by the applicable ethics rules.

As to the due process challenges, Chrysler and Mercedes respond that Anderson was initially examined in open court and that Orion had a chance to cross-examine him there. As to the merits, Chrysler and Mercedes argue that clear and convincing evidence supports a finding of sanctionable conduct, especially given the efforts to hire Anderson to access confidential information learned by Anderson while employed by Chrysler.

A court may impose sanctions under its inherent powers "where the party 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1058 (7th Cir. 1998) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). Sanctionable conduct must be shown by clear and convincing evidence. *Ty Inc. v. Softbelly's, Inc.*, 517 F.3d 494, 498–99 (7th Cir. 2008). In the Seventh Circuit, "the imposition of sanctions requires that the party to be sanctioned receive notice of the possible sanction and an opportunity to be heard." *Larsen v. City of Beloit*, 130 F.3d 1279, 1286 (7th Cir. 1997). As issues of law, a court of appeals reviews *de novo* whether the district court provided sufficient notice and opportunity to be heard. *In*

*re Rimsat, Ltd.*, 212 F.3d 1039, 1044 (7th Cir. 2000). A district court's decision to impose sanctions is reviewed for an abuse of discretion. *Johnson v. Cherry*, 422 F.3d 540, 549 (7th Cir. 2005). "[R]arely will [a court of appeals] disturb a district judge's reasoned decision to choose a particular level of sanctions." *Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1066 (7th Cir. 2000).

We first address the due process challenges raised. Based on the record before us, we conclude that the district court provided Orion and Spangenberg the necessary notice and opportunity to be heard to satisfy due process. The Seventh Circuit has held that notice of potential sanctions can come from either the court or from an opposing party. *See In re Rimsat, Ltd.*, 212 F.3d at 1045. Here, a "Brief in Support of Motions in Limine and Request for Hearing Regarding Witness Patrick Anderson," filed under seal by Chrysler and Mercedes, J.A. 5931–59, set forth the possibility of and the bases for evidentiary sanctions. *See* J.A. 5938 ("Dismissal (or suppression of defenses) may be appropriate."). Further, despite its styling, that document sets forth significant detail as to the specific conduct later found sanctionable by the district court. *See* J.A. 5932–38. *Cf. Johnson*, 422 F.3d at 551–52 (noting that "the offending party must be on notice of the specific conduct for which she is potentially subject to sanctions"). In addition, the court held a thorough evidentiary hearing regarding the issue, and only relied on publicly available evidence (rather than evidence from the closed hearing) to support its finding of sanctionable conduct.

As to the opportunity to be heard, the Seventh Circuit has held that that opportunity includes a chance for a party to "present his or her case at a meaningful time and in a meaningful manner, but [that] a hearing is not invariably required before sanctions may be imposed." *In re Rimsat*, 212 F.3d at 1046. Here, before actually imposing sanctions during the hearing, J.A.10226–27, the

district court raised the possibility of sanctions and discussed the propriety of such sanctions with counsel for all parties, J.A.10200–26. In that discussion, counsel did not argue the proper level of sanctions, but instead set forth arguments why sanctions should or should not be imposed. *See id.* For example, counsel for Orion and Spangenberg argued that the conduct later found to be sanctionable was necessary because Chrysler and Mercedes knew Orion transferred the '658 patent, but did not admit so until right before trial. J.A.10205–07. In addition, counsel for Orion and Spangenberg argued that the record merely shows lawyers "fulfilling their duty as they understood that duty to be," not engaging in sanctionable conduct. J.A.10223–26. Following that discussion, the district court imposed an evidentiary sanction—Orion and Spangenberg would not be able to present "evidence on the question of reliance." J.A.10226–27. We conclude based on the hearing transcript that Orion and Spangenberg had the opportunity to, and did, make arguments as to whether or not sanctions should be imposed. In other words, they had an opportunity to be heard "at a meaningful time and in a meaningful manner." *See In re Rimsat*, 212 F.3d at 1046. The district court heard those arguments and simply disagreed with them. That does not, however, violate due process.

As to the merits, we conclude that the district court did not abuse its discretion, but, instead, imposed appropriate and proportional evidentiary sanctions on Orion and Spangenberg. We agree with the reasoning of the district court, *see Post-Trial Decision*, 559 F. Supp. 2d at 974–75, that Spangenberg engaged in sanctionable conduct. In particular, we are persuaded by the failure of Spangenberg, an experienced attorney, to erect the appropriate "Chinese wall" to preclude access to confidential information, known by Anderson only based on his time spent as an attorney with Chrysler.

Further, we are not persuaded by the efforts to cloak the sanctioned conduct in the guise of compliance with applicable ethical obligations. Contrary to the argument by Orion and Spangenberg, rule 3.3(b) of the Michigan Rules of Professional Conduct did not require Anderson to "dissuade Butler from what [Anderson] perceived could be perjury." *See* Orion Opening Br. 57. As set forth in the first sentence of the cited comment, and inferable from the text of rule 3.3(b) itself, that rule only "governs the conduct of a lawyer who is representing a client in a tribunal." Anderson was not, however, representing Orion or Spangenberg in the Breach of Warranty Suit, and thus, had no obligation under the cited rule.

For these reasons, the district court did not violate due process in its procedures and did not abuse its discretion by imposing evidentiary sanctions against Orion and Spangenberg. Thus, we affirm the district court as to this issue.

CONCLUSION

For the reasons set forth above, we rule as follows: **In the appeals from the DaimlerChrysler Patent Suit**, (1) we *affirm* the district court's constructions of all the disputed claim terms; (2) we *affirm* the judgment of invalidity of claims 16 and 27 of the '658 patent; (3) we *affirm* the judgment of noninfringement of the '658 patent; and (4) we *affirm* the finding of an exceptional case under 35 U.S.C. § 285 and the resulting award of damages. **In the appeals from the Breach of Warranty Suit**, (1) we *affirm* the denial of the motion to dismiss for lack of personal jurisdiction over Orion and Spangenberg; (2) we *affirm* liability for breach of the Warranty Provision; (3) we *affirm* the award of damages consisting of attorney fees incurred by Chrysler and Mercedes in prosecuting the Breach of Warranty Suit, but *reverse* the award of damages consisting of attorney fees incurred by Chrysler and Mercedes in defending against the Daim-

lerChrysler Patent Suit; and (4) we *affirm* the imposition of evidentiary sanctions based on witness tampering. We do not reach the conditional cross-appeal raised by Chrysler and Mercedes.

## AFFIRMED-IN-PART AND REVERSED-IN-PART

### COSTS

Costs to Chrysler and Mercedes.